**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SEANLIM YITH; SEAK LEANG YITH,
*Plaintiffs-Appellants*,

v.

KIRSTJEN NIELSEN, in her Capacity
as Secretary for Department of
Homeland Security; LEON
RODRIGUEZ, in his Capacity as
Assistant Secretary for Department
of Homeland Security and Director
for Citizenship and Immigration
Services; MARI-CARMEN JORDAN, in
her Capacity as District Director for
Department of Homeland Security
and Director for Citizenship and
Immigration Services; JONATHAN
CRAWFORD, in his Capacity as
Director of the Fresno Sub-Office of
Citizenship and Immigration
Services; JEFFERSON B. SESSIONS III,
Attorney General,
*Defendants-Appellees.*

No. 16-15858

D.C. No.
1:14-cv-01875-
LJO-SKO

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, Chief Judge, Presiding

Argued and Submitted December 5, 2017
San Francisco, California

Filed February 7, 2018

Before:  Milan D. Smith, Jr. and Sandra S. Ikuta, Circuit
Judges, and John D. Bates,[*] District Judge.

Opinion by Judge Ikuta;
Concurrence by Judge Bates

## SUMMARY[**]

### Immigration

The panel reversed the district court's dismissal for
failure to state a claim of Seanlim and Seak Leang Yith's
complaint requesting adjudication of their naturalization
applications, holding that the district court erred in
concluding that 8 U.S.C. § 1429 precluded the Yiths from
obtaining relief.

8 U.S.C. § 1429 provides that "no application for
naturalization shall be considered by the Attorney General if
there is pending against the applicant a removal proceeding

---

[*] The Honorable John D. Bates, United States District Judge for the
District of Columbia, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act."

The panel concluded that, by its terms, § 1429 precludes only the executive branch from considering an applicant's naturalization application, and only when there is pending against the applicant a removal proceeding pursuant to a warrant of arrest. Because the district court is not the executive branch and there was no pending removal proceeding pursuant to a warrant of arrest, the panel concluded that § 1429 is not applicable to the Yiths.

Concurring in part and concurring in the judgment, District Judge Bates agreed that § 1429 does not apply to the Yiths, but would reverse on that basis alone, and did not think it necessary to decide whether § 1429—if it did apply— would preclude the district court from considering a naturalization application.

## COUNSEL

Bruce Leichty (argued), Bruce Leichty PC, Escondido, California, for Plaintiffs-Appellants.

Timothy M. Belsan (argued), Senior Litigation Counsel; Jeffrey S. Robins, Assistant Director; William C. Peachey, Director; Audrey B. Hemesath, Assistant United States Attorney; Phillip A. Talbert, United States Attorney; District Court Section, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

**OPINION**

IKUTA, Circuit Judge:

Seanlim and Seak Leang Yith appeal from the district court's dismissal of their complaint requesting adjudication of their naturalization applications pursuant to 8 U.S.C. § 1447(b). Relying on 8 U.S.C. § 1429, the district court concluded that the Yiths were precluded from obtaining any relief because they were concurrently in removal proceedings. *See* 8 U.S.C. § 1429 (providing that "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act"). The court therefore dismissed their complaint for failure to state a claim. We reverse, because the limitation imposed by § 1429 applies only to the executive branch's adjudication of naturalization applications, and only when removal proceedings are pending pursuant to an arrest warrant, neither of which is applicable here.

I

We begin by providing the relevant legal framework. In 2002, Congress transferred the functions of the Immigration and Naturalization Service to the Department of Homeland Security (DHS), and transferred the function of adjudicating naturalization petitions to the United States Citizenship and Immigration Services (USCIS), a component of DHS. 6 U.S.C. §§ 202(3), 251(2), 271(b)(2). As a result, although 8 U.S.C. § 1421(a) states that "[t]he sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General," courts interpret this reference, as

well as references to the Attorney General in 8 U.S.C. §§ 1421, 1429, 1445, and 1447, as referring to the authority of the USCIS. *See Hernandez de Anderson v. Gonzales*, 497 F.3d 927, 933 (9th Cir. 2007) (noting transfer of authority).

A person seeking naturalization must file an application with the USCIS. A USCIS employee is designated to "conduct examinations upon applications for naturalization," including taking testimony, administering oaths, and requiring the attendance and testimony of witnesses. 8 U.S.C. § 1446(b). After such an examination, the USCIS employee must "make a determination as to whether the application should be granted or denied, with reasons therefor." *Id.* § 1446(d). If the application for naturalization is denied following the USCIS employee's examination under § 1446, "the applicant may request a hearing before an immigration officer." *Id.* § 1447(a).

Once applicants have exhausted administrative remedies, they may appeal to a district court. The statutes provide for an appeal in two distinct circumstances. *See United States v. Hovsepian*, 359 F.3d 1144, 1162–63 (9th Cir. 2004). First, if a USCIS employee fails to make a determination "as to whether the application should be granted or denied" pursuant to § 1446(d) "before the end of the 120-day period after the date on which the examination is conducted," then the applicant "may apply to the United States district court for the district in which the applicant resides for a hearing on the

matter," 8 U.S.C. § 1447(b).**¹**    The district court "has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the [USCIS] to determine the matter."  *Id.*  Second, if the applicant had a hearing before an immigration officer pursuant to § 1447(a), and the immigration officer denied the application, the applicant "may seek review of such denial" before a district court.  *Id.* § 1421(c).**²**  "Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application."  *Id.*

---

**¹** 8 U.S.C. § 1447(b) states, in full:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

**²** In full, 8 U.S.C. § 1421(c) reads:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

Certain applicants are not eligible for naturalization. First, neither the USCIS nor the district court may naturalize a person "against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act." *Id.* § 1429.[3] Second, the USCIS may not consider an application for

---

[3] In full, 8 U.S.C. § 1429 reads:

Except as otherwise provided in this subchapter, no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter. The burden of proof shall be upon such person to show that he entered the United States lawfully, and the time, place, and manner of such entry into the United States, but in presenting such proof he shall be entitled to the production of his immigrant visa, if any, or of other entry document, if any, and of any other documents and records, not considered by the Attorney General to be confidential, pertaining to such entry, in the custody of the Service. Notwithstanding the provisions of section 405(b), and except as provided in sections 1439 and 1440 of this title no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act: Provided, That the findings of the Attorney General in terminating removal proceedings or in canceling the removal of an alien pursuant to the provisions of this chapter, shall not be deemed binding in any way upon the Attorney General with respect to the question of whether such person has established his eligibility for naturalization as required by this subchapter.

naturalization "if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act." *Id.*

II

We now turn to the facts of this case. Seanlim and Seak Leang Yith are siblings and citizens of Cambodia who were admitted as lawful permanent residents in March 2006, based on approved immigrant visa petitions filed by their stepmother, Sarin Meas, a U.S. citizen. Seanlim Yith filed an application for naturalization with USCIS in February 2011, and Seak Yith filed an application in December 2012. Both siblings were scheduled to appear for naturalization examinations in June 2013, but the USCIS cancelled the interviews and did not reschedule them. In 2014, the Yiths repeatedly contacted the USCIS regarding the status of their application; they were told that the adjudication was "delayed" or that their cases were "pending," but that the USCIS could not determine when the review process for their applications would be completed.

The Yiths subsequently filed a complaint in district court, seeking to compel the USCIS to adjudicate their applications. While the government's motion to dismiss was pending, the USCIS scheduled the examination for the Yiths' naturalization applications. The parties stipulated to hold the court proceedings in abeyance pending the USCIS examination.

The examinations took place as scheduled on March 10, 2015. For the first time, the USCIS told the Yiths that their stepmother, whose petition had been the basis for legal permanent resident status, had testified that her marriage to

their father was fraudulent, and therefore they had been ineligible for a visa when they entered the United States. After the examination, the USCIS issued notices of intent to deny the Yiths' applications. The notices stated that the Yiths were not eligible for naturalization because they had not been lawfully admitted for permanent residence. The deadline for issuing a final decision on the Yiths' application was July 8, 2015, the 120th day after the examination. Instead, on July 7, 2015, the USCIS issued notices to appear, thus commencing removal proceedings.

Returning to district court, the Yiths moved to amend their original complaint and the government filed a new motion to dismiss. According to the government, 8 U.S.C. § 1429 precluded a court from considering a naturalization application when the applicant had been placed in removal proceedings. Therefore, the government argued, either the district court lacked subject matter jurisdiction over the complaint or the Yiths failed to state a claim upon which relief could be granted.

The district court dismissed the Yiths' complaint without prejudice on the ground that it failed to state a claim. Relying on § 1429 and the Second Circuit's decision in *Ajlani v. Chertoff*, 545 F.3d 229 (2d Cir. 2008), the court held that it could not adjudicate the Yiths' naturalization applications or order the USCIS to adjudicate them while removal proceedings remained pending. The court stated that the Yiths could refile their complaint if removal proceedings concluded in the Yiths' favor.

The Yiths timely appealed. We review the dismissal of a complaint for failure to state a claim de novo. *Morrison v. Peterson*, 809 F.3d 1059, 1064 (9th Cir. 2015). Because the

USCIS did not issue final decisions on the Yiths' naturalization applications within 120 days after their examinations, the district court had jurisdiction to adjudicate their naturalization applications under 8 U.S.C. § 1447(b) and correctly rejected the government's argument that the commencement of removal proceedings stripped the district court of subject matter jurisdiction. *Cf. De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1046 (9th Cir. 2004) (holding that commencement of removal proceedings does not affect a district court's jurisdiction to review an immigration officer's denial of a naturalization application under § 1421(c)).**[4]** We have jurisdiction under 28 U.S.C. § 1291.

### III

On appeal, the Yiths argue that the district court erred in dismissing their complaint for failure to state a claim. They contend that § 1429 does not apply for two reasons: (1) it prevents only the executive branch, not the federal courts, from adjudicating naturalization applications; and (2) it applies only if "a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act" is pending against the applicant. We examine these arguments in turn.

### A

We begin by considering the language in § 1429 that "no application for naturalization shall be considered by the *Attorney General*." (emphasis added). According to the Yiths, because this language applies only to the Attorney General, it does not preclude a district court from considering

---

**[4]** The government does not renew this argument on appeal.

a naturalization application that is properly before the court pursuant to § 1447(b).

We agree.  As a general rule, we do not look beyond the unambiguous language of a statute.  "[W]hen a statute designates certain persons . . . all omissions should be understood as exclusions[.]"  *Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1084 (9th Cir. 2007) (quoting *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc)).  Here, the statute refers only to the Attorney General and provides no indication that the language applies to the courts.  Therefore, on its face, § 1429 restricts only the Attorney General and does not limit the district court's power to naturalize an applicant while removal proceedings are pending.

This reading of the pertinent language in § 1429 is supported by the context.  Section 1429 addresses two situations: (1) when "there is outstanding a final finding of deportability" and (2) when "there is pending against the applicant a removal proceeding."  8 U.S.C. § 1429.  For the former, § 1429 provides that "no person shall be naturalized." *Id.*  But for the latter, it states only that "no application for naturalization shall be considered by the Attorney General." *Id.*  In other words, § 1429 precludes both the executive branch and the courts from naturalizing applicants "against whom there is outstanding a final finding of deportability" but prohibits only the Attorney General from naturalizing applicants against whom a removal proceeding is pending. *Id.*  Interpreting the narrower limitation that "no application for naturalization shall be considered by the Attorney General" to mean the same as "no person shall be naturalized" would read out the reference to the Attorney General and treat distinct clauses as identical.  *See United*

*States v. Menasche*, 348 U.S. 528, 538–39 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute[.]").

Our reading of the statute is also supported by considering it in its historical context. "Before 1990, district courts had authority to naturalize, while authority to deport . . . aliens was vested in the Attorney General. This differentiation of function gave rise to a 'race between the alien to gain citizenship and the Attorney General to deport[.]'" *Bellajaro*, 378 F.3d at 1045 (quoting *Shomberg v. United States*, 348 U.S. 540, 544 (1955)). In 1952, to end this race, Congress enacted § 1429, which provided that "no petition for naturalization shall be *finally heard by a naturalization court* if there is pending against the petitioner a deportation proceeding." Immigration and Nationality Act, Pub. L. No. 414, § 318, 66 Stat. 163, 244 (1952) (codified at 8 U.S.C. § 1429 (1952)) (emphasis added); *see also Bellajaro*, 378 F.3d at 1045.

Then, in 1990, Congress amended the law to vest naturalization authority in the Attorney General. Immigration Act of 1990, Pub. L. No. 101-649, § 401(a), 104 Stat. 4978, 5038 (1990) (codified at 8 U.S.C. § 1421(a)(1994)) ("The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General."); *see Bellajaro*, 378 F.3d at 1045. At that time, Congress amended § 1429, replacing "a naturalization court" with "the Attorney General." Immigration Act of 1990 § 407(d)(3) (codified at 8 U.S.C. § 1429); *see also Bellajaro*, 378 F.3d at 1045. Congress also provided for judicial review of a denied naturalization application in § 1421(c), Immigration Act of 1990 § 401(c), and judicial review of a delayed application in

§ 1447(b), *id.* § 407(d)(14); *see also Bellajaro*, 378 F.3d at 1045.

Therefore, the history of § 1429 shows that Congress initially barred courts from considering naturalization applications during removal proceedings, but subsequently removed any reference to courts. Nothing in the 1990 amendments suggests that Congress intended to preserve the 1952 act's bar on a district court naturalizing applicants while removal proceedings are pending, and Congress's decision to remove the provision suggests it wanted to end such a bar.

Our decision in *Bellajaro* is not to the contrary. *Bellajaro* concerned the district court's authority under § 1421(c), which provides that "[a] person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court." 378 F.3d at 1045 (quoting 8 U.S.C. § 1421(c)). In *Bellajaro*, the INS denied an application for naturalization under § 1429 because removal proceedings were pending against the applicant and § 1429 prevented the agency from considering his application while removal proceedings were pending. *Id.* at 1044. The applicant sued in district court, seeking a de novo hearing on the merits of his application. *Id.* Because § 1421(c) allows an applicant whose application for naturalization has been denied to "seek review of such denial before the United States district court," *id.* at 1045 (quoting 8 U.S.C. § 1421(c)), we concluded that a district court had jurisdiction to determine whether the agency had erred in denying the application, *id.* at 1043. Because the agency in *Bellajaro* had correctly applied § 1429 and denied the application because removal proceedings were

pending, we affirmed the district court's decision to uphold the agency's denial. *Id.* at 1046–47.

Unlike § 1421(c), which applies when an agency denies an application, § 1447(b) applies when the government fails to make a determination within a 120-day period and gives the district court jurisdiction over the entire "matter." 8 U.S.C. § 1447(b) (stating that "the applicant may apply to the United States district court . . . for a hearing on the matter" and "[s]uch court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the [USCIS] to determine the matter").   Here, the USCIS did not deny the Yiths' naturalization applications, and so the district court's review is not limited to the reason for the agency's denial, but extends to the entire matter (i.e., the application for naturalization) that was pending before the agency.

In arguing against this conclusion, the government primarily relies on the Second Circuit's decision in *Ajlani*, which held that § 1429 does not permit an alien to state a claim for relief under § 1447(b) while removal proceedings are pending against him.  545 F.3d at 241.  In *Ajlani*, the USCIS granted an alien's application for naturalization, then, when it discovered the alien's prior convictions, revoked the application and initiated removal proceedings. *Id.* at 231–32. The applicant filed a complaint requesting the district court grant his application or remand to the agency with instructions.  *Id.* at 233.  The district court dismissed the action, holding that, "in light of the pending removal proceedings," the applicant could not state a claim for relief. *Id.*  The Second Circuit affirmed, holding that the pendency of removal proceedings precludes an applicant "from stating a claim for relief under 8 U.S.C. § 1447(b)."  *Id.* at 241.

Although *Ajlani* identified several reasons for its decision, none of them are persuasive in light of the statutory language. First, *Ajlani* reasoned that because § 1429 limits a district court's ability to grant relief under § 1421(c), by analogy, § 1429 also limits a district court's ability to grant relief under § 1447(b). *Id.* at 239–40 (first citing *Saba-Bakare v. Chertoff*, 507 F.3d 337, 340 (5th Cir. 2007); then citing *Bellajaro*, 378 F.3d at 1045–46; and then citing *Zayed v. United State*s, 368 F.3d 902, 905–06 (6th Cir. 2004)). But this analysis ignores the different language in § 1421(c), which authorizes a district court to review only the agency's denial, while § 1447(b) authorizes a district court to determine the "matter" of the naturalization application. Therefore, *Ajlani*'s reliance on *Bellajaro* and other decisions analyzing § 1421(c) is misplaced.

Next, *Ajlani* concluded that because § 1447(b) applies only if "there is a failure to make a determination" on the naturalization application, and such a condition precedent cannot occur when removal proceedings are pending, then § 1447(b) does not authorize a district court to determine an alien's naturalization application in those circumstances. *Id.* at 240. *Ajlani* reasoned that the word "failure" means "the omission of an expected action, occurrence, or performance," *id.* (quoting *Black's Law Dictionary* 631 (8th ed. 2004)), and "an action cannot be 'expected' when it is proscribed by law," *id.* Because § 1429 precludes the USCIS from making a naturalization determination when removal proceedings are pending, *Ajlani* concluded that the USCIS cannot be deemed to have failed to make such a determination under § 1447(b). *Id.*

We reject this strained reading of the statute. When the USCIS has undertaken an examination of a person who has

submitted a naturalization application, and then does not make a determination on the application within 120 days, it has failed to make a determination regardless whether it decides to commence removal proceedings and thereby prevent itself from making the determination. Under a common-sense usage of the word "failure," a person fails to accomplish a requirement even when the failure was caused by the person's self-sabotage or other intentional efforts to make it impossible to accomplish the goal.

Indeed, the error in *Ajlani*'s interpretation of failure is epitomized by the facts of this case. Congress enacted § 1447(b) to prevent undue delay in making naturalization determinations. *See Hovsepian*, 359 F.3d at 1163 ("A central purpose of [§ 1447(b)] was to reduce the waiting time for naturalization applicants."); *Bustamante v. Napolitano*, 582 F.3d 403, 410 (2d Cir. 2009) ("The statutory scheme aims to provide USCIS with an incentive to decide applications in a timely fashion or risk losing jurisdiction to decide those applications in the first instance."). The facts in this case indicate that the USCIS, after first delaying the Yiths' examinations, intentionally attempted to avoid the deadline set by § 1447(b) for determining a naturalization application. The USCIS had the ability to make a timely determination within 120 days, and even informed the Yiths that it intended to deny their applications. Nevertheless, the USCIS issued the notice to appear on the 119th day in order to avoid the statutory deadline, and does not argue that the notices operated as functional denials. *Ajlani*'s strained interpretation of § 1447(b), which would authorize the USCIS to avoid making a determination within the 120-day deadline, would defeat Congress's intent. Therefore, we adopt the straightforward reading of the statute that the USCIS fails to

make a determination under § 1447(b) when it fails to deny the applications before the statutory deadline.

Finally, *Ajlani* justified its interpretation of § 1447(b) based on a mistaken construction of the overall statutory framework and interpretation of Congress's goals. 545 F.3d at 240–41. The Second Circuit reasoned that "district court authority to grant naturalization relief while removal proceedings are pending cannot be greater than that of the Attorney General." *Id.* at 240. Therefore, it explained, "[a]s much as the statutory framework permits district courts under § 1447(b) to evaluate naturalization petitions where the USCIS improperly neglects to do so, it would seem to work against the framework set forth in §§ 1447 and 1429 for the district court to undertake such an evaluation where Congress has expressly prohibited the Attorney General from doing so." *Id.* We disagree, because *Ajlani* substituted its own views of Congressional purpose for the actual language of the statute. "[I]t is never our job to rewrite a constitutionally valid statutory text." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017). "Indeed it is quite mistaken to assume" as *Ajlani* does, "that 'whatever' might appear to 'further[ ] the statute's primary objective must be the law.'" *Id.* (alteration in original) (quoting *Rodriguez v. United States*, 480 U.S. 522, 526 (1987)). Contrary to *Ajlani*'s reasoning, the legislative history raises the opposite inference: When Congress amended § 1429, it chose to replace "naturalization court" with "Attorney General," Immigration Act of 1990, § 407(d)(3); *see also Bellajaro*, 378 F.3d at 1045, and did not add "district court" to the statute, strongly suggesting Congressional intent to limit § 1429 to decisions by the executive branch.

Because the statutory language compels us to conclude that § 1429 applies only to the Attorney General, not the district court, the district court erred in concluding that the reference to the Attorney General in § 1429 prevented it from granting relief under § 1447(b).

B

We next consider the language in § 1429 that the government may not consider an applicant's naturalization application "if there is pending against the applicant *a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act*." 8 U.S.C. § 1429 (emphasis added). The Yiths argue that § 1429 does not apply to them by its terms because their removal proceeding was not pursuant to a warrant of arrest. The government argues that we must defer to the DHS's regulatory interpretation of "warrant," which states: "For the purposes of [8 U.S.C. § 1429], a notice to appear issued under 8 CFR part 239 (including a charging document issued to commence proceedings under sections 236 or 242 of the Act prior to April 1, 1997) shall be regarded as a warrant of arrest." 8 C.F.R. § 318.1. Because the DHS issued notices to appear to the Yiths, the government contends, "a removal proceeding pursuant to a warrant of arrest" was pending against them, for purposes of § 1429. The government relies on a Seventh Circuit decision which upheld this interpretation of "warrant," on the ground that an agency "can define its own vocabulary," and "[s]ince 'arrest' does not imply custody even in police parlance (full custodial arrests are a subset of all arrests), there's no logical problem with an agency calling its official process a 'notice to appear' and a 'warrant of arrest' at the same time, without needing to issue

two separate documents." *Klene v. Napolitano*, 697 F.3d 666, 670 (7th Cir. 2012).

We review an agency's construction of the statute it administers under the formula set forth in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc*., 467 U.S. 837, 842–44 (1984). "*Chevron* established a familiar two-step procedure for evaluating whether an agency's interpretation of a statute is lawful." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs*., 545 U.S. 967, 986 (2005). "At the first step, we ask whether the statute's plain terms 'directly addres[s] the precise question at issue.'" *Id.* (alteration in original) (quoting *Chevron*, 467 U.S. at 843). "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron*, 467 U.S. at 843 n.9. "[T]he court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43.

Under these tools of statutory interpretation, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). "When determining the plain meaning of language, we may consult dictionary definitions." *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1088 (9th Cir. 2007). "It is also 'a fundamental canon that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *The Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). "If, under these canons, or other traditional means of determining Congress's intentions," we can determine that Congress

clearly defined "warrant of arrest," then we may not defer to DHS's contrary interpretation. *See id.*; *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 512 (1996) ("Where the language of the statute is clear, resort to the agency's interpretation is improper."). Only "if a statute is silent or ambiguous with respect to the issue at hand" do courts move to the second step of the *Chevron* framework, and ask whether "the agency's answer is based on a permissible construction of the statute." *The Wilderness Soc'y*, 353 F.3d at 1059 (quoting *Chevron*, 467 U.S. at 843).

Here, the "plain terms" of § 1429 "directly addres[s] the precise question at issue." *Brand X Internet Servs.*, 545 U.S. at 986 (alteration in original) (quoting *Chevron*, 467 U.S. at 843). Section 1429 provides that the government's consideration of an application is precluded only if a "removal proceeding" is pending "pursuant to" (1) "a warrant of arrest" that (2) has been "issued under the provisions of this chapter or any other Act."

The meaning of "warrant of arrest" in § 1429 is unambiguous. According to the dictionary, a "warrant" means "[a] writ directing or authorizing someone to do an act, esp. one directing a law enforcer to make an arrest, a search, or a seizure." *See Black's Law Dictionary* (10th ed. 2014). The term "arrest" means "[a] seizure or forcible restraint" or "[t]he taking or keeping of a person in custody by legal authority, esp. in response to a criminal charge; specif., the apprehension of someone for the purpose of securing the administration of the law, esp. of bringing that person before a court." *Id*. And the term "warrant of arrest" means "[a] warrant issued by a disinterested magistrate after a showing of probable cause, directing a law-enforcement officer to arrest and take a person into custody." *Id.* In other words,

the plain meaning of the term "warrant of arrest" is an order authorizing law enforcement to seize and detain a person as necessary for the administration of law.

Further, § 1429 states that the "warrant of arrest" must be one issued under the provisions of Chapter 12 of the Immigration and Nationality Act (where § 1429 is located), or any other federal act. Chapter 12 provides for the issuance of warrants of arrest in 8 U.S.C. § 1226(a), which states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."[5] After arresting the alien, the Attorney General "may continue to detain the arrested alien" or "may release the alien" if certain criteria are met. *Id.* In short, a "warrant of arrest" for purposes of § 1429 is a writ issued under § 1226 authorizing law enforcement personnel to arrest and detain an alien pending the results of removal proceedings.

Given this interpretation of "warrant of arrest," we conclude it is a distinct document from a "notice to appear." *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1058 (9th Cir. 2008) (indicating that the two documents are distinct, and the Attorney General "may issue a warrant of arrest concurrently with the notice to appear").[6] "Notice to appear" is defined in

---

[5] The government does not argue that § 1429 may refer to a warrant of arrest issued under any other provision in Chapter 12 or any other federal act.

[6] DHS has likewise interpreted a "warrant of arrest" as distinct from a "notice to appear" in regulations other than § 318.1. *See* 8 C.F.R. § 236.2(a) ("[T]he notice to appear, and the warrant of arrest, *if issued*, shall be served in the manner prescribed . . . .") (emphasis added); *id.* § 236.1(b) ("At the time of issuance of the notice to appear, or at any time

8 U.S.C. § 1229(a) as a "written notice" that is "given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any)" providing specified information, including the time and place at which removal proceedings will be held. In short, a notice to appear is akin to a summons that provides an alien with specified information regarding removal proceedings; it does not direct law enforcement to arrest and detain the alien. Further, unlike warrants of arrest, notices to appear are required in all removal proceedings. *See id.*; 8 C.F.R. § 1239.1(a) ("Every removal proceeding conducted under section 240 of the Act (8 U.S.C. 1229a) to determine the deportability or inadmissibility of an alien is commenced by the filing of a notice to appear with the immigration court."). If Congress intended to preclude the government's consideration of a naturalization petition whenever the applicant was in removal proceedings, then it would have had no need to state that § 1429 is applicable only when a removal proceeding is "pursuant to a warrant of arrest." DHS's interpretation would make "pursuant to a warrant of arrest" unnecessary, which "is contrary to our general 'reluctan[ce] to treat statutory terms as surplusage.'" *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 788 (2011) (alteration in original) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

---

thereafter and up to the time removal proceedings are completed, the respondent *may* be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest.") (emphasis added); *id.* § 238.1(g) (same). Indeed, DHS's Form I-200, entitled "Warrant of Arrest, United States Department of Homeland Security," is distinct from Form I-862, entitled "Notice to Appear, United States Department of Homeland Security." Form I-200 even identifies "the pendency of ongoing removal proceedings" as sufficient probable cause to arrest an alien, further showing that the forms are not equivalent.

The government argues that the phrase "warrant of arrest" is ambiguous because "there is no universal definition of the term 'arrest.'" In making this argument, the government relies on our previous decision in *United States v. Leal-Felix*, 665 F.3d 1037 (9th Cir. 2011) (en banc). We reject this argument. *Leal-Felix* required us to interpret § 4A1.2 of the U.S. Sentencing Guidelines, which provides that "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)," but "[i]f there is no intervening arrest, prior sentences are counted separately" with certain exceptions. United States Sentencing Guidelines Manual § 4A1.2(a)(2) (U.S. Sentencing Comm'n 2016). The defendant in *Leal-Felix* argued that his presentence report erred by counting his two citations for driving with a suspended license as two separate offenses even though there was no "intervening arrest" because he had been cited, not arrested. *Leal-Felix*, 665 F.3d at 1040–41. We agreed, explaining that "[a]rrest is commonly used as it is defined: 'the taking or detainment (of a person) in custody by authority of law; legal restraint of the person; custody; imprisonment.'" *Id.* at 1041 (quoting Webster's Third New International Dictionary 121 (1993)). We noted that "this common understanding creates a clear and usable definition," but "is not necessarily controlling in statutory construction" because the "[i]nterpretation of a word or phrase [in a statute] depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Id.* at 1041–42 (second alteration in original) (citations omitted). Using the tools of statutory construction, we interpreted "arrest" as requiring "that the individual be formally arrested; the mere issuance of a citation, even if considered an arrest

under state law, is insufficient." *Id.* at 1038–39. We noted that "[a] formal arrest may be indicated by informing the suspect that he is under arrest, transporting the suspect to the police station, and/or booking the suspect into jail." *Id.* at 1041 (footnotes omitted).

*Leal-Felix*'s analysis of "arrest" for purposes of the Sentencing Guidelines is consistent with our interpretation here. As in *Leal-Felix*, we have concluded that the common meaning of the word "arrest" does not include merely issuing a citation, but requires a "formal arrest" that involves taking a suspect into custody. *See id.* Moreover, as noted in *Leal-Felix*, statutory interpretation always "depends upon reading the whole statutory text, considering the purpose and context of the statute." *Id.* at 1042 (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)). Here, when read in context, a "warrant of arrest" cannot mean a "notice to appear." *See supra* at 19–22.

Because we determine that Congress clearly defined "warrant of arrest" as a writ that issues to arrest and detain an alien, and is not the same as a notice to appear, we disagree with the Seventh Circuit's decision in *Klene*. *Klene* did not use the tools of statutory interpretation to determine whether "warrant of arrest" has an unambiguous meaning in the context of § 1429. 697 F.3d at 670. Nor did it consider whether a warrant of arrest "issued under the provisions of this chapter or any other Act" included arresting and detaining an alien. *Id.* Rather *Klene* merely stated, without citation or reasoning, that the word arrest "does not imply custody even in police parlance (full custodial arrests are a subset of all arrests)." *Id.* Because our analysis compels a different conclusion, we reject *Klene*'s acceptance of DHS's interpretation in § 318.1.

Although the Yiths received a notice to appear, they were not subject to "a warrant of arrest issued under the provisions" of Chapter 12 of the INA. Accordingly, their removal proceedings were not pursuant to such a warrant of arrest, and this portion of § 1429 was inapplicable to their case.

## IV

The district court erred in dismissing the Yiths' complaint for failure to state a claim under the authority of § 1429. By its terms, § 1429 precludes only the executive branch from considering an applicant's naturalization application, and only when there is pending against the applicant a removal proceeding pursuant to a warrant of arrest. Because the district court is not the executive branch and there was no pending removal proceeding pursuant to a warrant of arrest, § 1429 was not applicable. We reverse the district court and remand for further proceedings consistent with this opinion.[7]

**REVERSED** and **REMANDED.**

---

[7] In light of this decision, we need not address the Yiths' arguments that the district court abused its discretion by denying them leave to amend their complaint and violated their procedural due process rights by not holding oral argument.

BATES, Senior District Judge, concurring in part and concurring in the judgment:

I agree that 8 U.S.C. § 1429 does not apply to the Yiths because their removal proceedings were not pursuant to a warrant of arrest. Because this is a sufficient ground to decide the case—and, indeed, is a conclusion that § 1429 has no application here—I would reverse on this basis alone and do not think it necessary to decide whether § 1429—if it did apply—would preclude the district court from considering a naturalization application under 8 U.S.C. § 1447(b). *PDK Labs., Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) ("[I]f it is not necessary to decide more, it is necessary not to decide more . . . .").