**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| M&T FARMS, a California General Partnership, | No. 23-15837 |
| *Plaintiff-Appellant*, | D.C. No. 5:21-cv-09590-SVK |
| v. | |
| FEDERAL CROP INSURANCE CORPORATION, a wholly-owned government corporation that administers the Federal Crop Insurance Program; RISK MANAGEMENT AGENCY, the United States Department of Agriculture's agency that manages the FCIC and administers federal crop insurance policies, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Northern District of California
Susan G. Van Keulen, Magistrate Judge, Presiding[*]

---

[*] The parties consented to proceed before a magistrate judge. *See* 28 U.S.C. § 636(c).

Argued and Submitted April 5, 2024
San Francisco, California

Filed June 4, 2024

Before:  Milan D. Smith, Jr., Andrew D. Hurwitz, and
Anthony D. Johnstone, Circuit Judges.

Opinion by Judge Hurwitz

## SUMMARY[**]

### Administrative Procedure Act / *Auer* Deference

The panel affirmed the district court's summary judgment in favor of the Federal Crop Insurance Corporation ("FCIC") in an action by M&T Farms challenging an official interpretation of an FCIC insurance policy.

M&T Farms is a California general partnership between two farmers.  MT&T Farms and a third farmer sell farm commodities through a storefront, B&T Farms, which owns their business name and goodwill and is also a California general partnership.  M&T Farms purchased crop insurance under the Whole-Farm Revenue Protection Pilot Policy (the "WFRP Policy") from Producers Agriculture Insurance Company ("ProAg"), an insurer approved and reinsured by the FCIC.

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

M&T Farms filed a claim seeking the full policy amount, which ProAg denied. After M&T instituted arbitration, the parties sought interpretations of the WFRP Policy from the FCIC, which concluded that the WFRP Policy does not allow a partner who files taxes on a fractional share of farming activity conducted by a partnership to be eligible for WFRP coverage for the fractional share of that farming activity.

M&T Farms challenged the FCIC's decision that a partnership "holding the business name and good will of [others] (i.e., marketing and selling the commodities produced)" is engaged in "farming activity" under section 3(a)(4) of the WFRP Policy, and that therefore, any entity reporting a fractional share of the partnership's activity on its tax returns is ineligible for WFRP Policy coverage.

Applying the arbitrary and capricious standard of review under the Administrative Procedure Act, the panel held that the WFRP Policy contained an ambiguity regarding the definition of "farming activity." In light of this ambiguity, the FCIC's conclusion that a partnership selling its partners' products and holding their goodwill and business name was engaged in "farming activity" under section 3(a)(4) of the policy had a reasonable basis and was also reasonable as a matter of policy. Because the FCIC's interpretation of "farming activity" in the WFRP Policy was reasonable, it survived APA arbitrary and capricious review.

Applying deference to an agency interpretation of its regulation under the framework announced in *Auer v. Robbins*, 519 U.S. 452 (1997), the panel held that the term "farming activity" in the WFRP policy was genuinely ambiguous, the FCIC's conclusion had a reasonable basis,

and the FCIC's conclusion was entitled to controlling weight.

---

**COUNSEL**

Eric D. McFarland (argued) and Darin T. Judd, Thompson Welch Soroko & Gilbert LLP, San Rafael, California, for Plaintiff-Appellant.

Christopher F. Jeu (argued), and Stephanie Hinds, Assistant United States Attorneys; Michelle Lo, Civil Division Chief; Ismail J. Ramsey, United States Attorney; United States Department of Justice, Office of the United States Attorney, San Francisco, California; for Defendants-Appellees.

## OPINION

HURWITZ, Circuit Judge:

In this Administrative Procedure Act ("APA") action, M&T Farms challenges an official interpretation of an insurance policy by the Federal Crop Insurance Corporation ("FCIC").[1]  The district court granted summary judgment to the FCIC, and we affirm.

## BACKGROUND

M&T Farms is a California general partnership between two farmers, Paul Missou and Gary Tognetti.  M&T Farms and a third farmer, Ed Tognetti, sell farm commodities through a storefront, B&T Farms, which owns their business name and goodwill.  B&T Farms is also a California general partnership, in which two partners, M&T Farms and Ed Tognetti, hold 65% and 35% interests, respectively.

M&T Farms purchased crop insurance for the 2017 crop year under the Whole-Farm Revenue Protection Pilot Policy ("WFRP Policy") from Producers Agriculture Insurance Company ("ProAg"), an insurer approved and reinsured by the FCIC.  M&T Farms later filed a claim seeking the full policy amount, $1,991,876.   In January 2019, ProAg

---

[1] The FCIC is a government corporation within the Department of Agriculture created "[t]o carry out the purposes" of the Federal Crop Insurance Act ("FCIA"). 7 U.S.C. § 1503; 31 U.S.C. § 9101(3)(D). The Risk Management Agency ("RMA") supervises the FCIC and administers FCIA programs.  7 U.S.C. § 6933(a), (b)(1)–(3).  "For all relevant and practical purposes, the RMA and the FCIC are one and the same."  *William J. Mouren Farming, Inc. v. Great Am. Ins. Co.*, No. 05-cv-0031, 2005 WL 2064129, at *2 (E.D. Cal. Aug. 24, 2005).  We therefore refer to the two defendant agencies in this opinion collectively as "the FCIC."

cancelled the policy and denied the claim, stating that M&T Farms was not a "qualifying person" under section 3(a)(4) of the WFRP Policy, which provides:

> The [IRS] Schedule F, or Substitute Schedule F, must cover 100 percent of your farm operation. (A tax entity which reports a fractional share of farming activity conducted by a partnership, corporation or any other "joint venture" does not qualify for WFRP coverage on the fractional share of farming activity).

ProAg denied the claim because M&T Farms "reports a fractional share of farming activity conducted by a partnership"—B&T Farms.

M&T Farms then instituted arbitration against ProAg. The arbitrator authorized the parties to seek an interpretation of the WFRP Policy from the FCIC, as allowed by federal law. *See* 7 U.S.C. § 1506(r); 7 C.F.R. § 400.767. In December 2019, M&T Farms and ProAg each requested an interpretation of section 3(a)(4).[2]

---

[2] M&T Farms and ProAg also requested an interpretation of section 3(e) of the WFRP Policy and paragraph 21(1)(d) of the WFRP Handbook. Section 3(e) states: "Originating pass-through entities may insure the allowable revenue from commodities produced by the farm operation under WFRP. Owners of a pass-through entity that are not the originating entity may not insure pass-through revenue or loss under WFRP." Paragraph 21(1)(d) of the WFRP Handbook largely restates section 3(a)(4) of the WFRP Policy but also states: "a tax entity may still qualify for WFRP coverage on a fractional share of a commodity in which they have an insurable interest." Those provisions are not at issue in this litigation.

In March 2020, the FCIC responded to the requests, stating that the WFRP Policy "does not allow a partner whom [*sic*] files taxes on a fractional share of farming activity conducted by a partnership [to be] eligible for WFRP coverage for the fractional share of that farming activity."[3]

In August 2020, M&T Farms submitted another request for interpretation, providing this hypothetical, in which Entity A corresponds to B&T Farms and Entity B to M&T Farms:

> Entity A is a general partnership made up of Entity B (a partnership) and individual C.
>
> Entity A is not a "farm operation" because it reports no farm activity to the IRS in the form o[f] revenues or expenses. Moreover, Entity A is not an "originating entity" because it physically produces no commodities. Instead, Entity A is a store-front that holds the business name and goodwill for Entity B and individual C.
>
> Entity B is a "single farm operation" because it reports 100 percent of its farm activity to the IRS in the form of revenue and expenses on its tax forms under a single taxpayer number. Entity B is also an "originating entity" because it actually physically produces its percentage share of the

---

[3] In July 2020, M&T Farms submitted a second request for interpretation, which the FCIC rejected because it contained "specific facts" about the requestor's case in violation of 7 C.F.R. § 400.767(a)(8).

commodities grown nominally under the name of Entity A.

Individual C is likewise a "single farm operation" because it reports 100 percent of its farm activity to the IRS in the form o[f] revenue and expenses on its tax forms under a single taxpayer number. Individual C also actually physically produces its percentage share of the commodities grown nominally under the name of Entity A.

M&T Farms then suggested that in this scenario, "Entity A is not a 'farm operation' and has no farming activity," and that Entity B therefore qualifies for WFRP coverage under section 3(a)(4).

The FCIC responded in September 2020, stating that "[a] farm operation must meet eligibility requirements of both sections 3(a)(4) and 3(e) for coverage under WFRP." Addressing M&T Farms' hypothetical, it said:

Using the example from the requestor's interpretation, Entity A is a partnership that includes Entity B and individual C. Entity A, holding the business name and goodwill of Entity B and individual C (i.e., marketing and selling the commodities produced), is the pass-through entity. Although Entity B may be considered an originating pass-through entity with regards to itself, it reports a fractional share of the general partnership (Entity A). Therefore, Entity B and individual C do not meet the requirements of

eligibility within section 3(a)(4) under WFRP.

M&T Farms then filed this action challenging the FCIC's interpretation of section 3(a)(4). The district court granted summary judgment to the government defendants and M&T Farms timely appealed.

**JURISICTION AND STANDARD OF REVIEW**

We have jurisdiction under 28 U.S.C. § 1291 and review a summary judgment de novo. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 929 (9th Cir. 2010). Under the APA, we must uphold a final agency decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[4] 5 U.S.C. § 706(2)(A). The "court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

An agency's interpretation of a regulation may also be entitled to deference under the framework announced in *Auer v. Robbins*, 519 U.S. 452 (1997). Although the WFRP

---

[4] An FCIC regulation provides that its interpretation of a crop insurance policy is a "final agency action" subject to judicial review under the APA, 5 U.S.C. § 704. *See* 7 C.F.R. § 400.765 (defining "final agency determination" as "[m]atters of general applicability regarding FCIC's interpretation of provisions of the [FCIA] or any regulation codified in the Code of Federal Regulations, including certain policy provisions, which are applicable to all participants in the Federal crop insurance program and the appeals process"). Section 33(a)(1)(iii) of the WFRP Policy additionally provides that "[a]n interpretation by FCIC of a policy provision is considered a determination that is a matter of general applicability."

Policy is not technically a regulation, the parties do not challenge the district court's holding that the FCIC's interpretations of the WRFP Policy are entitled to *Auer* deference. We therefore assume without deciding that *Auer* deference applies. *See Bottoms Farm P'ship v. Perdue*, 895 F.3d 1070, 1074 (8th Cir. 2018) ("Given the [FCIA's] broad grant of authority to the [FCIC], and the specific authority over the provisions of insurance and insurance contracts . . . we must give substantial deference to the FCIC's interpretation of the special provision."); *see also Davis v. Producers Agric. Ins. Co.*, 762 F.3d 1276, 1286 (11th Cir. 2014) ("[I]nterpretive issue[s] within the exclusive province of the FCIC" receive "substantial weight because they were made by the agency charged with administration of the statute.").

## DISCUSSION

M&T Farms challenges the FCIC's decision that a partnership "holding the business name and good will of [others] (i.e., marketing and selling the commodities produced)" is engaged in "farming activity" under section 3(a)(4) of the WFRP Policy and that, therefore, any entity reporting a fractional share of the partnership's activity on its tax returns is ineligible for WFRP Policy coverage.

Under the arbitrary and capricious standard of review, a court cannot

> vacate an agency's decision unless it has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (cleaned up). If *Auer* deference applies, we must also defer to an agency's interpretation of a "genuinely ambiguous" regulation if its interpretation is reasonable and entitled to controlling weight. *Kisor v. Wilkie*, 588 U.S. 558, 574–76 (2019). We conclude that the FCIC's interpretation of "farming activity" in the WFRP Policy passes muster under both standards of review.

## I. APA analysis

APA "arbitrary and capricious" review is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1115 (9th Cir. 2007) (cleaned up).

Neither the governing statute, regulations, WFRP Policy, nor the WFRP Handbook define "farming activity." *See, e.g.*, 7 U.S.C. § 1502; 7 C.F.R. §§ 400.402, 400.765. And, as the district court noted, dictionaries provide no definitive answer about whether the marketing and sales of agricultural commodities by a "store-front" owned by entities that grow the commodities is "farming activity." *See Yith v. Nielsen*, 881 F.3d 1155, 1165 (9th Cir. 2018) (courts may consult dictionary definitions when interpreting statutes); *Farm*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "to farm" as "to cultivate land" and "to conduct the business of farming").

M&T Farms argues that, read as a whole, the "WFRP Policy provides a clear answer." Its argument begins with the definition of "farm operation" in the WFRP Policy: "All of the farming activities for which revenue and expenses are reported to the IRS under a single taxpayer identification number." M&T Farms argues that only a "farm operation" can carry out "farming activity." It also notes that the WFRP Policy ties "allowable revenue" and "allowable expenses" (used to calculate coverage in the event of losses) to the production of commodities.[5] M&T Farms argues that these provisions compel the conclusion that an entity like B&T Farms, which markets and sells commodities produced by its general partners but does not itself report revenue or expenses to the IRS (because its general partners do), is not engaged in "farming activity."

As the FCIC notes, however, M&T Farms overlooks that the WFRP Policy defines "[d]irect marketing" as "[m]arketing commodities directly to consumers without the involvement of a third party (e.g., farmer's markets, u-pick, roadside stands, internet sales, etc.)" and links "[d]irect

---

[5] The WFRP Policy includes the following definitions:

> Allowable expenses – Farm expenses, specified by this policy and adjusted as applicable, that are incurred in the production of commodities on your farm and reported to the IRS on farm tax records.

> Allowable revenue – Allowable revenue is farm revenue, specified by this policy and including applicable adjustments, from the production of commodities produced by your farm operation, or purchased for further growth and development by your farm operation, that the IRS requires you to report on farm tax records.

marketing sales records" to "allowable revenue."**⁶**  Thus, the WFRP Policy envisions that marketing and sales can qualify as "farming activity."  And, the WFRP Policy's definitions of farm operation and allowable costs and expenses do not directly define "farming activity."  As the FCIC stresses, these terms all pertain only to insured entities, not affiliated partnerships that sell the insured's goods, like B&T Farms.

In light of this ambiguity, the FCIC's conclusion that a partnership selling its partners' products and holding their goodwill and business name is engaged in "farming activity" under section 3(a)(4) of the WFRP Policy has a reasonable basis.  Under the arbitrary and capricious standard of review, "the agency's action need only be a reasonable, not the best or most reasonable, decision." *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010) (per curiam) (cleaned up).    The FCIC's interpretation of "farming activity" in the WFRP Policy satisfies this requirement.

The example M&T Farms submitted to the FCIC acknowledged that the "store-front" partnership (i.e., B&T Farms) "holds the business name and goodwill" for its general partners (i.e., M&T Farms and Ed Tognetti) and their farm commodities are nominally grown in B&T Farms' name.  From this information, the FCIC reasonably inferred that the hypothetical store-front partnership marketed and sold the commodities produced by its general partners, an

---

⁶ The WFRP Policy defines "[d]irect marketing sales records" as:

> Contemporaneous records that document the sale of commodities through direct marketing. If you sell a commodity through direct marketing, you must provide the contemporaneous records used to determine allowable revenue on the Schedule F farm tax form.

inference that M&T Farms concedes. That direct marketing and sales activity, the FCIC concluded, was "farming activity" under WFRP Policy section 3(a)(4).

This is a reasonable conclusion given the WFRP Policy's definitions of "direct marketing" and "direct marketing sales records." From there, the FCIC's conclusion that the store-front's general partners are not covered under the WFRP Policy flows inexorably from the plain language of section 3(a)(4)—"A tax entity which reports a fractional share of farming activity conducted by a partnership . . . does not qualify for WFRP coverage on the fractional share of farming activity."

The FCIC's interpretation is also reasonable as a matter of policy. First, denying WFRP Policy coverage to entities that report the marketing and sales activities of other entities allows insurers to effectively evaluate coverage, claims, and audit records. Second, the interpretation helps to avoid "double dipping," under which two entities make claims arising from the same loss. *See Kalvinskas v. Cal. Inst. of Tech.*, 96 F.3d 1305, 1309 (9th Cir. 1996) (addressing "double dipping" in the disability context). Although there is no allegation of double-dipping in this case, it is reasonable for the FCIC to interpret the WFRP Policy to prevent the practice in general.

M&T Farms' contention that the FCIC's interpretation would lead to "clearly absurd" results is unpersuasive. M&T Farms' suggestion that the interpretation would only allow farmers to sell their commodities through direct marketing is incorrect. As the FCIC points out, farmers selling through *unaffiliated* third parties would not report a fractional share of those parties' farming activity and would therefore qualify for WFRP coverage.

Nor does the fact that neither M&T Farms nor B&T Farms would qualify for WFRP coverage render the FCIC's interpretation unreasonable.  Nothing in the governing statute guarantees that every business structure adopted by farmers will qualify for WFRP coverage.  *See* 7 U.S.C. § 1508(a)(1) ("[T]he Corporation may insure . . . producers of agricultural commodities . . . under 1 or more plans of insurance").  And the WFRP Policy makes clear that some businesses (such as those who do not file a Schedule F) are ineligible for coverage.[7]

To be sure, other interpretations of "farming activity," including M&T Farms' proposal, are possible.  If we were simply interpreting the language of an insurance contract in the first instance, we might well apply the familiar canon of construing any ambiguity against the insurer.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Partridge*, 514 P.2d 123, 128 (Cal. 1973).  But here, we review a final agency action; we are not ourselves interpreting the WFRP Policy anew.  We must instead afford considerable deference to the FCIC's reasonable interpretation of its policy provisions.  *See Muratore v. U.S. Off. of Pers. Mgmt.*, 222 F.3d 918, 922 (11th Cir. 2000); *Sternberg v. Sec'y of Health & Human Servs.*, 299 F.3d 1201, 1205 (10th Cir. 2002).  Because the FCIC's interpretation of "farming activity" in the WFRP Policy is reasonable, it survives APA arbitrary and capricious review.

---

[7] The FCIC suggests that M&T Farms may be eligible for other kinds of federal crop insurance coverage.  We express no opinion whether that is so.

## II.  *Auer* analysis

### A.  Ambiguity of the phrase "farming activity"

As discussed, the term "farming activity" under section (3)(a)(4) of the WFRP Policy is "genuinely ambiguous" because the governing statute, regulations, WFRP Policy, and WFRP Handbook do not define the term.  *See Kisor*, 588 U.S. at 575 (holding that, to determine whether a regulation "is genuinely ambiguous, a court must exhaust all the traditional tools of construction" (cleaned up)); 7 U.S.C. § 1502; 7 C.F.R. §§ 400.402, 400.765.  And dictionary definitions provide little help in clearly identifying whether non-producing activities like marketing could constitute "farming activity" under the WFRP Policy.  *See Yith*, 881 F.3d at 1165.

Although M&T Farms and the FCIC offer competing interpretations of the term, both parties can find support for their proposed readings of "farming activity" in the WFRP Policy.  *Cf. Goffney v. Becerra*, 995 F.3d 737, 742 (9th Cir. 2021) ("The parties direct us to various other provisions of the regulations.  One supports Goffney's reading and others support the government's, and they do not clearly resolve the ambiguity.").  Therefore, the ambiguity requirement for *Auer* deference is satisfied.

### B.  Reasonableness of agency interpretation

An agency's interpretation of a regulation is only entitled to deference if it is reasonable.  *Kisor*, 588 U.S. at 575–76. "In other words, it must come within the zone of ambiguity the court has identified after employing all its interpretive tools."  *Id.* at 576.  "It is well established that an agency's interpretation need not be the only possible reading of a regulation—or even the best one—to prevail."  *Decker v.*

*Nw. Env't Def. Ctr.*, 568 U.S. 597, 613 (2013). For the same reasons outlined above with respect to the APA analysis, the FCIC's conclusion that a partnership selling its partners' products and holding their goodwill and business name is engaged in "farming activity" under the WFRP Policy has a reasonable basis. It is consistent with the WFRP Policy's definitions of "direct marketing" and "direct marketing sales records," is not foreclosed by any other definition, and is justified by legitimate policy considerations.

## C. Weight of agency interpretation

To determine whether an agency's interpretation of a regulation is entitled to *Auer* deference, a court must "make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight." *Kisor*, 588 U.S. at 576. Under this inquiry, an interpretation must (1) "be the agency's authoritative or official position," (2) "in some way implicate its substantive expertise," and (3) "reflect [its] fair and considered judgment." *Id.* at 577–79 (cleaned up). The FCIC's interpretation of the WFRP Policy satisfies these criteria.

M&T Farms does not dispute that the FCIC's interpretation of the WFRP Policy is an authoritative official position. *See* 7 C.F.R. § 400.766(b)(2) (FCIC interpretations are "binding on the parties to the dispute"). Nor does M&T Farms claim that the interpretation does not reflect the agency's fair and considered judgment. *See Goffney*, 995 F.3d at 745 ("[T]he agency [need not] engage in an exhaustive interpretive discussion—even an interpretation implicit in an agency's order can reflect the agency's 'fair and considered judgment.'"). Indeed, the FCIC carefully considered M&T Farms' interpretation request and responded only after review by nine staff members.

Rather, M&T Farms only challenges the FCIC's substantive expertise, urging that its interpretation "turns on concepts such as legal entities (e.g., partnerships) and tax reporting (e.g., Schedule F and the like) for which the RMA-FCIC has no special knowledge." But Congress established the FCIC to administer a system of crop insurance and tasked it with issuing regulations and interpreting the FCIA and its regulations. 7 U.S.C. §§ 1502–03, 1506(o), (r). The FCIA "produced a complex and highly technical regulatory program," and "[t]he identification and classification of . . . eligibility criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns." *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 697 (1991). The FCIC's interpretation of "farm activity" as part of the WFRP Policy's eligibility conditions necessarily implicated the agency's substantive expertise in administering crop insurance. And, contrary to M&T Farms' argument, the FCIC's expertise necessarily includes knowledge of legal entities and tax reporting in the farming context, as those considerations are essential to properly administering a crop insurance program.

## CONCLUSION

The judgment of the district court is **AFFIRMED**.